IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LINDA A. WILLIAMS,                          CV 06-1822-MA

       Plaintiff,                        OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

       Defendant.

KAREN STOLZBERG
11830 S.W. Kerr Parkway, #315
Lake Osweg, OR 97035
(503) 251-0708

       Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1158


1  - OPINION AND ORDER

DAVID J. BURDETT
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2522

      Attorneys for Defendant

MARSH, Judge.

     Plaintiff Linda Williams seeks judicial review of the final decision of the Commissioner denying her December 19, 2002, application for supplemental security income benefits (benefits) under Title XVI of the Social Security Act, 42 U.S.C. § 1281-83f.[1]

     Plaintiff was 46 years old on the date of the final decision of the Commissioner.  She claims she has been disabled since December 1, 1991, following two neck surgeries and subsequent knee surgery.  She alleges she suffers from headaches and pain, numbness and weakness in her neck and arms.  Her claim was denied initially and on reconsideration.  The Administrative Law Judge (ALJ) held a hearing on April 7, 2005, and issued a decision that plaintiff was not disabled on October 6, 2005.  Plaintiff timely appealed the decision to the Appeals Council.  On November 16, 2006, the Appeals Council denied plaintiff's request for review. The ALJ's decision, therefore, became the final decision of the Commissioner for purposes of review.

---

   [1] Plaintiff did not appeal the denial of two earlier applications.

2  - OPINION AND ORDER

Plaintiff contends the ALJ's decision is not supported by substantial evidence and she seeks an order from this court reversing the Commissioner's decision and remanding the case for an award of benefits.

For the following reasons, the final decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings.

### THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. <u>Bowen v. Yuckert</u>, 482 U.S.137, 140 (1987). <u>See also</u> 20 C.F.R. § 404.1520. Plaintiff bears the burden of proof at Steps One through Four. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

At Step One, the ALJ found plaintiff had not worked in substantial gainful activity since the alleged onset of her disability.

At Step Two, the ALJ found plaintiff has the following severe impairments under 20 C.F.R. §404.1520(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities):  cervical findings, surgical intervention, with an absence of current objective deficits, and history of carpal tunnel releases.

At Step Three, the ALJ found these impairments do not meet or equal a listed impairment.

The ALJ found plaintiff has the residual functional capacity to perform work that involves some light exertional physical activities but not the full range of light work.

At Step Four, the ALJ found plaintiff is unable to perform her past relevant work and has no transferable skills from her past relevant work.

At Step Five, the ALJ found plaintiff is able to perform other work that exists in significant numbers in the regional and national economies, and which are within her exertional limitations, including motel housekeeper, routine office helper, and mail clerk.

Consistent with the above findings, the ALJ found plaintiff was not under a disability and denied her claim for benefits.

## ISSUES ON REVIEW

Plaintiff asserts the ALJ erred (1) in rejecting plaintiff's testimony as to her physical limitations, (2) in failing to give germane reasons for discounting the lay witness evidence, (3) in rejecting the opinions of treating physician Janis Howatt, M.D., and treating chiropractic physician David Hadeed, D.C., (4) in finding plaintiff's fibromyalgia and migraine headaches were not severe, and (5) in presenting an inadequate hypothetical to the vocational expert.

4  - OPINION AND ORDER

## LEGAL STANDARDS

**Burden of Proof**.

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

## RELEVANT RECORD

**1.    Plaintiff's Testimony.**

Plaintiff provided written information in support of her disability application and testified at a hearing held on August 10, 2005.

**Family, Education History.**

Plaintiff is divorced. She has five children, four of whom no longer live with her. She cares for her youngest child, a six-year-old with Down's Syndrome. She has a high school diploma and two years of college. She did not obtain a college degree.

**Work History.**

Until 1991, plaintiff worked as an instructional aide, cashier, and process server/legal investigator.  During 1998-99, she provided in-home elderly care services.  She has not worked since then.

**Medical Issues.**

In 1991, plaintiff suffered from neck pain from a bulging disc and, as a result, underwent two cervical operations in 1991 and 1992, the latter resulting in a C5-6 cervical fusion.  The operations partially relieved her neck symptoms by allowing her to move her head and use her arms but they did not relieve her pain, which has gradually "increased drastically."  On a scale of 1-10, her pain is constantly at 7-8 and increases with activity to 8-9.  Whenever she does housework, she has intense radiating pain in her shoulders and arms that lasts for hours, and "sometimes a day or two."

Beginning in 2002, Plaintiff began feeling pain in her forearms, more so on the right, with constant numbness in the right hand and intermittent numbness in the left hand.  In September 2004, she underwent a carpal tunnel release procedure in both wrists.  The procedure relieved her pain, but she has problems with two fingers on each hand, which makes it difficult for her to grip a pen for more than a minute or two or tie shoe

laces.  She now wears braces on her fingers.  She also had an operation to repair a torn meniscus in her right knee in 1978 and cartilage repair to her left knee in 1999.

Plaintiff also complains of random pain in her legs, hips, shoulders, and arms from Fibromyalgia.  Finally, she complains of migraine headaches that occur approximately twice a month, with symptoms of nausea, vomiting, and heightened light and noise sensitivity.

**Daily Living Activities**.

Plaintiff lives in an apartment with her daughter.  She prepares all the meals for both of them.  She cares for her daughter.  She regularly does housework, including laundry, vacuuming, and mopping, and scrubbing, but lacks the energy to do it as she did before.  She takes frequent breaks while doing the housework.  She shops monthly now rather than weekly.  She enjoys hobbies such as crafts, drawing, sewing, painting, writing, woodworking, and gardening but does not do them much because of pain.  Neighborhood kids help plaintiff mow her lawn.

2.  **Lay Witness Evidence**.

Pamella Marez has daily contact with plaintiff.  Plaintiff has a good relationship with her family and has many friends.  Her friends visit her because she is unable to drive because of neck pain and the effect of pain medications.  Plaintiff does the

gardening when needed. She uses her computer internet minimally to check e-mails. Plaintiff's primary physical activity is taking care of her child, who is very active and keeps her very busy. Plaintiff takes care of her personal needs and does the basic housework chores "when needed" with occasional help from friends.

Marez believes plaintiff's behavior does not prevent her from working, but "her everyday responsibilities take up much of her time and attention and her medications stop her from most work responsibilities."

**3.   Plaintiff's Medical Records.**

Plaintiff's medical records include results of multiple diagnostic tests taken after plaintiff's neck surgery, including MRIs in 1998, 2001, and 2002, and a Myelogram and CT Scan in 2005, and the reports of plaintiff's medical and chiropractic physicians from 1991 through 2005 regarding her neck pain, knee operations and carpal tunnel syndrome.

**Diagnostic Tests.**

The 1998 MRI revealed normal findings at C2-4 and C7-T1, a mild central annulus bulge at 4-5, a solid fusion in straight alignment with no evidence of impingement at C5-6, mild central annulus bulges extending slightly to the right with a small right broad-based disc herniation at C6-7, and otherwise, a normal cervical cord.

9  - OPINION AND ORDER

The 2001 MRI revealed similar mild degenerative disc changes at C4-5 and C6-7 "with minimal canal stenosis at C6-7 and perhaps slight foraminal narrowing."  The 2002 MRI findings were the same as those from the 2001 MRI.  The 2005 Myelgram and CT Scan showed a well-healed C5-6 fusion, but nerve-root impingement on the left at C4-5 and bilaterally at C6-7.  A discectomy and fusion were recommended at these levels.

As noted, Plaintiff underwent two neck operations in 1991 and 1992 and has complained of neck pain since then.  She also underwent a successful cervical nerve root decompression procedure in September 2005   She also contends she suffers from serious impairments related to fibromyalgia and migraine headaches.

**Treating Physicians.**

Lawrence Franks, M.D. - Neurosurgeon.

In June 1991, Dr. Franks performed a right C5-6 foraminotomy on plaintiff to remove nerve root compression associated with a bulging disc that was causing "progressive C-6 radiculopathy and increasing severe pain."  Following the operation, plaintiff had "good relief from her right arm pain" and there was "no evidence of a herniated disc process."

In October 1991, plaintiff developed radiating pain into her right arm that increased through January 1992.  A month

later, Dr. Franks performed an anterior cervical diskectomy and
fusion at C5-6.  She underwent physical therapy and by June 1992,
her pain level was at 2 on a scale of 1-10.

Mark Yerby, M.D. - Neurologist.

Dr. Yerby examined plaintiff in 1998, when plaintiff was
working as a home-care giver for the elderly.  Plaintiff
complained of constant neck pain radiating on the right into the
shoulders and on the left into plaintiff's fingers.  Dr. Yerby
concluded plaintiff's "symptoms seem out of proportion to the
findings on exam," and "[g]iven the duration of therapy and
relative lack of improvement the prognosis must be guarded."
Plaintiff showed "no evidence of a clearly localizing
neurological deficit."

Janis Howatt M.D - Internist.

Dr. Howatt treated plaintiff frequently from June 2000-
October 2004.  During that time frame, Plaintiff complained inter
alia, of knee pain (discussed infra), sinus problems with
occasional sinus headaches, and chronic neck pain with
radiculitis and pain and numbness symptoms relating to carpal
tunnel syndrome.  In December 2002, plaintiff continued to
complain of night pain in her hands and migraine headaches.  In
February 2003, Dr. Howatt noted plaintiff "appears still and
resists any motion of the neck."  Her impression was "[c]hronic

pain syndrome secondary to degenerative disease." She noted an MRI "really does not disclose 'severe' disease, but mild degenerative changes" and plaintiff's symptoms of parathesias "are not explainable in any anatomic way." Dr. Howatt prescribed Vicodin and Neurontin for pain control. In May 2004, after plaintiff had been examined by a rheumatologist, Dr. Howatt diagnosed fibromyalgia syndrome along with chronic pain syndrome secondary to degenerative disease in the neck. By July 2004, plaintiff continued to complain of "chronic neck, upper back, and arm symptoms" and was having "more and more trouble with pain and numbness in her hands with any grasping activity and particularly at nighttime." Dr. Howatt opined plaintiff was "fairly disabled" with these symptoms. In October 2004, Dr. Howatt assessed plaintiff's condition as "[f]lare in trigger point post multiple surgeries for degenerative C-spine disease . . . and sinusitis." Plaintiff agreed to proceed with trigger point injection to relieve her pain.

In March 2006, after the ALJ issued his Findings but before the Appeals Council reviewed them, Dr. Howatt completed a form stating plaintiff suffered from "osteoarthritis, myofascial pain, vocal cord paralysis, and asthma." She opined that improvement was "expected" with "prescription medication [and] physical therapy," but that plaintiff was "unable to do physical exertion."

<u>David Hadeed, D.C. - Chiropractic Physician</u>.

Dr. Hadeed apparently treated plaintiff on one occasion in August 1995 for "cervical disk syndrome and bronchial neuralgia chronic in nature" caused by an "MVA" four day earlier. Plaintiff complained of "pain in the neck, mid back, deep pain radiat[ing] to the arms." Dr. Hadeed's objective findings included "limit[ed] function in the cervical spine, hypomobility, degenerative disks, annular bulge" which preexisted the immediate injury.

In February 2003, Dr. Hadeed opined on a preprinted form that plaintiff was permanently limited to working four hours a day based on diagnoses of chronic disk syndrome with ongoing aggravation. In making these diagnoses, he relied on the 1998 MRI. He also opined plaintiff could stand/walk one-four hours and sit for two hours while alternating standing and walking, all in an eight-hour day, and lift 5-10 lbs with her right arm and 1-5 lbs with her left arm, all occasionally in an eight-hour day. She was also limited to using her left hand for repetitive grasping, pushing and pulling, and fine manipulation.

<u>Stefan D. Tarlow, M.D. - Knee Specialist</u>.

In 1999, Dr. Tarlow treated plaintiff after she complained of grinding and popping in her left knee. An examination revealed a torn medial meniscus in plaintiff's left

knee.  Plaintiff underwent arthroscopic surgery to repair the
knee.  In September 2000, Dr. Tarlow again examined plaintiff
after she fell down the stairs.  Her left knee felt good but she
complained of right knee pain.  Dr. Tarlow injected the right
knee with lidocaine.  In March 2001, plaintiff underwent surgery
to repair a torn medial meniscus in her right knee, apparently
caused when she fell seven months earlier.

Robert E. Craven, M.D. - Radiologist.

In November 2003, plaintiff again fell down the stairs.
X-rays taken by Dr. Craven revealed "a narrowing of the medial
joint compartment of the left knee incident to early degenerative
changes, but otherwise, the knee was "normal."

Charles D. Layman, M.D. - Hand Surgeon.

In September 2004, Dr. Layman treated plaintiff for
bilateral carpal tunnel syndrome and performed a bilateral carpal
tunnel release.  In the month after the operation, her hands felt
"good" and she was satisfied with the results of the surgery.
Six months later she complained of recurrent numbness in the ring
and small fingers of her left hand.  Dr. Layman concluded the
numbness was "more likely . . . related to recurrent cervical
disc disease."

Darrell C. Brett, M.D. - Neurosurgeon.

In September 2005, plaintiff under went a nerve root
decompression procedure to relieve her neck and bilateral

radicular arm complaints.  The procedure was successful and she
had an excellent prognosis.

**Consulting/Examining Physicians.**[2]

<u>Katja Daoud, M.D. - Rheumatologist</u>.

In April 2004, Dr. Daoud examined plaintiff at Dr. Howatt's
behest regarding her complaints of polyarthralgias.  She found
plaintiff has no joint line tenderness, good range of motion, no
crepitus, slightly decreased neck lateral flexion and rotation
with no pain, normal back lordosis, and normal strength testing
and gait.  Dr. Daoud, however, found 12/18 myofascial trigger
points.  She diagnosed polyarthralgias with no evidence of
inflammatory arthritis and knee and neck pain related to probable
early osteoarthritis arising from her previous surgeries.  She
recommended exercise with no increase in narcotic medications.

<u>J. Scott Pritchard, D.O.</u>

In October 2001, Dr. Pritchard reviewed plaintiff's medical
records and concluded plaintiff had minimal radicular findings as
a result of her neck operations.  He also considered her knee
surgeries.  As a result, he opined that plaintiff is able to
climb ramps and stairs frequently, climb ladders, ropes,
and scaffolds occasionally, frequently balance, and occasionally

---

[2] Plaintiff underwent a psychodiagnostic examination and
review of her medical records based on her claim that she suffers
from post-traumatic stress disorder.  Plaintiff, however, does
not assert the ALJ erred in not finding a severe psychological
impairment.

stoop, kneel, crouch, and crawl.  She is limited in her ability
to reach overhead but has no other manipulative limitations.

    Martin Kehrli, M.D. and Richard Alley, M.D.

    In March 2003, these doctors reviewed plaintiff's medical
records and concluded plaintiff could frequently lift 10 lbs
and occasionally lift 20 lbs, and stand and sit for six hours
in an eight-hour workday.  They essentially agreed with
Dr. Pritchard's earlier conclusion as to plaintiff's postural
limitations.  They concluded plaintiff's pain complaints "are
out of proportion with objective findings" and she was "capable
of performing at least light work with overhead reaching
limitations."

**4.**   **Vocational Expert (VE) Testimony.**

    VE Patricia Ayerza testified that a person with plaintiff's
limitations described above, who also could perform only simple
one, two, three-step work because of medications she was taking
could perform jobs including those of process server, elder care-
giver, and housekeeper in a motel/hotel setting, routine office-
helper, and mail handler, that exist in substantial numbers in
the national and regional economy.

**ANALYSIS**

**1.**   **Rejection of Plaintiff's Testimony.**

    The ALJ discounted plaintiff's testimony regarding her
ability to work because the objective medical evidence and

16 - OPINION AND ORDER

evidence of her daily activities were inconsistent with an inability to engage in substantial gainful activity at a light level.

Standards.

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" (the Cotton test). Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)). See also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986). A claimant need not produce objective medical evidence of the symptoms or their severity. Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If a claimant produces objective evidence that underlying impairments could cause the pain she complains of and there is no affirmative evidence to suggest the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her symptoms. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Smolen, 80 F.3d at 1283. To determine whether plaintiff's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements

17 - OPINION AND ORDER

concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. at 1284 (citations omitted).

After a careful review of the objective medical evidence, and the evidence from plaintiff and the lay witness, the court finds the AlJ gave clear and convincing reasons for not fully crediting plaintiff's testimony regarding the extent of her limitations.  Her recitation of daily activities, as well as the evidence provided by lay witness Pamella Marez suggest that plaintiff's responsibilities in caring for her daughter may keep her from seeking work.  Although plaintiff needs to take multiple medications, the ALJ took the functional limitations arising from those limitations into account in his hypothetical to the VE.

**2.    Rejection of Lay Witness Evidence**.

Plaintiff contends the ALJ failed to give appropriate credit to the testimony of her friend regarding her ability to work, her limitations, and her mental state.

The ALJ may reject the testimony of lay witnesses only by giving reasons germane to each witness whose testimony is rejected.  *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

Here, as noted, the lay witness stated plaintiff could work but for her responsibilities to her child and the medications

she was taking.  The ALJ did not reject the lay witness testimony
as to what the witness observed.  The ALJ simply reached a
different conclusion as to plaintiff's disability based on those
observations.

**3.    Rejection of Opinions of Treating Physicians.**

The opinions of treating doctors should be given more weight
than the opinions of doctors who do not treat the claimant:

> Where the treating doctor's opinion is not
> contradicted by another doctor, it may be
> rejected only for clear and convincing
> reasons supported by substantial evidence in
> the record.  Even if the treating doctor's
> opinion is contradicted by another doctor,
> the ALJ may not reject this opinion without
> providing specific and legitimate reasons
> supported by substantial evidence in the
> record.  This can be done by setting out a
> detailed and thorough summary of the facts
> and conflicting clinical evidence, stating
> his interpretation thereof, and making
> findings.  The ALJ must do more than offer
> his conclusions.  He must set forth his own
> interpretations and explain why they, rather
> than the doctors', are correct.

Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)(internal
citations omitted).  In turn, "the opinions of examining
physicians are afforded more weight than those of non-
examining physicians." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir.
2007).  The opinions of treating physicians should be credited as
true if the ALJ fails to provide clear and convincing reasons for
rejecting them.  See Smolen v. Chater, 80 F.3d 1273, 1992 (9th Cir.
1996).

19  - OPINION AND ORDER

The ALJ rejected Dr. Hadeed's 2003 opinion as to plaintiff's functional limitations because, inter alia, it was based on a 1998 outdated MRI, a single treatment, and Dr. Hadeed did not review any other treatment records.  The court finds the ALJ's reasons are supported by clear and convincing evidence in the record. Moreover, the court notes

The ALJ, however, also ignored the treatment records and disability opinion of Dr. Howatt, who stated generally in 2004 that plaintiff was "fairly disabled" because of symptoms relating to hand weakness.  The ALJ also had no opportunity to address Dr. Howatt's 2006 post-decision opinion that plaintiff was "unable to do physical exertion" because of osteoarthritis, myofascial pain, vocal cord paralysis, and asthma.[3]  The court concludes the ALJ 's failure to address Dr. Howatt's first opinion regarding plaintiff's ability to work is error.  Dr. Howatt's 2004 opinion as to the weakness in plaintiff's hands is somewhat consistent with more specific medical evidence reflecting weakness in the small fingers and ring finger of one hand.  In her 2006 opinion, Dr. Howatt stated she "expected" improvement in plaintiff's condition, indicating plaintiff's inability to work may have been temporary.  Moreover, the nature of the opinion, on a preprinted form without explanation of the extent of any physical

_____

[3] The Appeals Council did have Dr. Howatt's 2006 opinion before it when it declined to review the ALJ's decision.

20  - OPINION AND ORDER

limitations, is not persuasive.  Nevertheless, in light of Dr.
Howatt's role as plaintiff's primary-care physician for an
extended period of time, the court concludes the ALJ should have
addressed Dr. Howatt's 2004 opinion and the medical reports on
which it was based specifically, and should have the opportunity
to address Dr. Howatt's 2006 opinion.  In addition, Dr. Howatt
should be provided the opportunity to provide more specific
reasons for any opinion she may have regarding plaintiff's ability
to work.

**4.    <u>Inadequate Analysis of Medical Evidence</u>.**

Plaintiff asserts the ALJ erred in finding her complaints
relating to fibromyalgia and migraine headaches were not severe.
The ALJ noted plaintiff's pain symptoms from fibromyalgia improved
with medication.  He also noted Dr. Daoud's opinion that plaintiff
"has no joint line tenderness, good range of motion, no crepitus,
slightly decreased neck lateral flexion and rotation with no pain,
normal back lordosis, and normal strength testing and gait."  The
ALJ also reiterated that plaintiff's pain complaints were
inconsistent with the level of her daily activities.  In addition,
although there are references in several medical reports to
headaches, often related to plaintiff's sinusitis, there is no
specific diagnosis by any physician that plaintiff suffers from
migraine headaches.

Nevertheless, Dr. Howatt originally diagnosed fibromyalgia, and as noted, the ALJ ignored her opinion.  On this record, the court concludes the ALJ erred in finding plaintiff's complaints of fibromyalgia were not severe without specifically addressing Dr. Howatt's medical reports and opinions.

**5.    Adequacy of Vocational Expert Testimony.**

The ALJ posed a hypotethical to the VE that accurately described plaintiff' limitations as he found them.  Nevertheless, the court finds the hypothetical to the VE is subject to further scrutiny based on the ALJ's failure to consider adequately Dr. Howatt's medical records and opinions.

**CONCLUSION**

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is **REVERSED** and this matter is **REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this  4  day of June, 2008.


        /s/  Malcolm F. Marsh
    MALCOLM F. MARSH
    United States District Judge


22  - OPINION AND ORDER